DAVID C. LANHAM *v.* HOME AUTO COMPANY *et al.*

(No. 7926)

Submitted October 2, 1934. Decided October 9, 1934.

*H. Roy Waugh* and *D. D. Stemple,* for appellant.
*Wm. T. George,* for appellee D. C. Lanham.

MAXWELL, JUDGE:

From a decree of the circuit court of Barbour County, vacating a judgment and enjoining the enforcement of an execution based thereon, the judgment creditor appeals.

The judgment, in the sum of $465.97, was rendered by the said court April 19, 1930, in favor of Home Auto Company, a corporation, against Dellet A. Lanham, Helen Lanham and David C. Lanham, in a proceeding upon notice of motion for judgment then pending in said court. The judgment was rendered upon default in appearance by the defendants.

In the suit at bar, David C. Lanham is plaintiff and the Home Auto Company and A. M. Dyer, sheriff of said county, are defendants. The grounds relied on by the plaintiff in support of his suit are that prior to the entry of said judgment against him, he had no notice, either actual or constructive, of the pendency of said motion for judgment, and that after judgment was taken against him, he had no notice thereof until execution was issued thereon in the month of July, 1933; that he has a good defense to said action.

The notice of the motion for judgment was dated February 20, 1930. The sheriff made two returns thereon. One return showed personal service on Dellet A. Lanham and Helen Lanham February 24, 1930. The other return reads as follows: "Executed the within notice of motion for judgment, and affidavit therewith, attached thereto, upon the within named D. C. Lanham, by delivering in person to Mrs. D. C. Lanham, a member of his family over the age of sixteen years, at his usual place of abode, an office copy thereof, and explaining to her the purport thereof, he, the said D. C. Lanham, not being found by me in Barbour County, West Va. The affidavit therewith was served at the same place, and in the same manner, and at the same time. J. H. Marsh, Sheriff Barbour County."

It will be noted that the quoted return does not set forth the date on which service was made, nor that it was made in Barbour County. As to the date, there can be no practical difficulty because the notice was dated February 20th and was returned executed to the circuit clerk's office February 25th. As to the place of service, there arises the legal presumption that it was within the officer's bailiwick. "Any process or notice may be exe-

cuted on or before the return day thereof. If it appear to be duly served and good in other respects, it shall be deemed valid, although not directed to any officer * * *." Code 1931, 56-3-11. "Any sheriff or constable, thereto required, shall serve a notice within his county and make return of the manner and time of service * * *." Code 1931, 56-2-1. On this basis of statutory duty, there becomes operative the presumption that the sheriff discharged the duties of his office in a lawful manner, and that he did not presume to act beyond the bounds of his bailiwick. Where a writ is addressed to a sheriff and he serves it, there can be no doubt of the presumption that he served it within his county. "Where the writ is served by the sheriff, the court may legally presume service on the defendant in the county to whose officer it is directed." *Lynch* v. *West*, 63 W. Va. 571, 575, 60 S. E. 606. Since, however, the above quoted statutes place upon a sheriff the duty of serving a notice such as was involved in said action, the same as though it were a writ addressed to him by a court, there is the same basis for the presumption that he acts faithfully in the one instance as in the other. "The law constantly presumes that public officers charged with the performance of official duty have not neglected the same but have duly performed it at the proper time and in the proper manner. In the absence of evidence to the contrary, this presumption will prevail, but it is not an indisputable one and may be overcome by countervailing evidence." Mechem's Public Offices and Officers, section 579. Of the same import: Throop on Public Officers, section 558. It is immaterial that the reference in the return to the copy of notice served as "an office copy" is not technically correct. The notice did not emanate from the clerk's office. Also, such return should give the name of the person to whom delivery is made, and then give his or her status with respect to the person sought.

But, not only does David C. Lanham say that he never received notice of the proposed motion for judgment, but his wife testified that no such notice was in fact delivered to her as is recited by the sheriff in his return.

The daughter-in-law, Helen Lanham, testified that she and her husband, Dellet A. Lanham, were on the front porch of their home, a short distance from and in view of the David C. Lanham home, when the sheriff served the notice on them on the 24th of February, 1930, and on that occasion she did not see the sheriff go to the David C. Lanham home or come from that direction. We do not have the testimony of Dellet A. Lanham; he died August 5, 1932, some months prior to the institution of the chancery suit now at bar. The sheriff (now ex-sheriff) testified that he has no recollection of the matter, but must rely on the return for what it says; that he would not have made two trips to the neighborhood where the Lanhams lived for the purpose of serving these notices, and therefore he concludes that they were served on the same trip; that he made and signed the return, also made a pencil memorandum on the back of the notice reading: "D. C. Lanham, by serving on his wife." On this basis of evidence, the circuit court was "of opinion that no legal service of process was had upon D. C. Lanham" in the notice of motion proceeding.

We are of opinion that this evidence was not sufficient to overthrow the presumption that a sworn officer of the law had faithfully discharged an official duty.

There obtained in this state from its formation until 1921 the common law rule giving verity and conclusiveness to a sheriff's return of service of process where it is sufficient on its face. It was deemed that the rule should stand as adamant to the end that there might be certainty and finality of judicial judgments and decrees. "The return of process by a sworn officer whose duty it is to serve it, showing a proper service must be accepted as a verity. * * * That the application of the rule may, in some cases, operate harshly, is more than offset by the great inconvenience that would arise from the uncertainty of judicial judgments and decrees if a different rule obtained." *Milling Co.* v. *Read,* 76 W. Va. 557, 568, 85 S. E. 726. But in recent years in this jurisdiction as well as in many others there has been some relaxation of the rigidity of the rule because the effort to prevent one

class of evils through strict application of the rule had opened the way to another class. It was found that the unyielding application of the iron-bound rule was wont to inflict injustice upon persons who were without notice of judicial proceedings pending against them. It was realized that such impending wrongs may be avoided by not extending the presumption of the verity of an officer's return to cases wherein its falsity was established by overwhelming evidence, and the complaining party had no actual notice; that, though recognizing there is much wisdom in the reasoning in support of the rule, a fetishistic veneration for it should not cause us to close our eyes to the avoidable injustices which its strict application may impose.

In this state, modification of the verity rule came through the decision of this Court in the case of *Nuttallburg Smokeless Fuel Co.* v. *First National Bank*, 89 W. Va. 438, 109 S. E. 766, decided November 8, 1921. The suit was in chancery, and its purpose was to enjoin the enforcement of a judgment which had been obtained by the bank in an action against the fuel company. In the action, the sheriff's return on the summons showed service on the fuel company "by delivering a true copy thereof in writing in Kanawha County, West Virginia, wherein he resides, to Thos. C. Beury the President of said corporation." At the time of the service, Beury was not president of the fuel company though he had been theretofore and at the time of the execution of the note upon which the action was based. Beury did not notify the fuel company that the summons had been served on him, nor did the officials of the company have any knowledge of the institution of the action.

There were two elements of the sheriff's return: first, the statement of fact that he had served a copy of the summons on Thomas C. Beury, and, second, the recital that Beury was president of the fuel company. The statement of fact remained unimpaired throughout, but the recital of Beury's connection with the fuel company proved to be not well founded. The attack on the return was upheld, not because of any untruthfulness in the

sheriff's return that he had served the process on Thomas C. Beury, but because he was not then president of the fuel company, as recited by the sheriff in his return, and the officials of the company had no actual notice of the institution of the action.

We held in syllabus 2 of that case: "A bill in equity will lie to vacate a judgment rendered in consequence of such return, upon proper allegations that the return was in fact false, that the person so served was not the president of such corporation, that no notice, actual or constructive, was received by the corporation of the pendency of such action at law, and that the corporation had a just defense to the action at law, and was prevented by such false return from asserting it." The opinion lays emphasis upon the high order of proof required to overcome in any particular a sheriff's return on process executed by him. Upon a second appeal in the *Nuttallburg* case, the principles announced in the first decision were reiterated and applied. *Nuttallburg Smokeless Fuel Company* v. *First National Bank,* 106 W. Va. 487, 145 S. E. 824.

The question of the overthrowing of a sheriff's return was next before this Court in the case of *Stepp* v. *State Road Commission,* 108 W. Va. 346, 151 S. E. 180. We there held, syllabus 1: "In a suit to set aside and annul a decree, entered in a former cause, on the ground that process was not issued and served on the defendants therein, and the decree so attacked declares that the cause was heard upon process duly issued, served, and returned to the clerk's office as to all of the defendants, and there is sharp conflict between the sheriff and his deputies on the one side and the complainants on the other as to the actual service of the process, one affirming and the other denying, (the process and service thereon being lost) the recitals in the decree should be taken as true in the absence of anything in the record contradictory thereof." In the opinion, we said that "we have receded from the verity rule as to the sheriff's return, where it clearly and convincingly appears that the return is false." The *Nuttallburg* case was cited. The

opinion proceeds: "But we were careful to say in the *Nuttallburg* case that the evidence to overthrow an alleged false return should be clear, satisfactory and convincing; and that if the party attacking the return had actual, presumptive or constructive notice of the pendency of the suit against him he could obtain no relief against a default judgment."

The next case in this line was *Transfer & Storage Company* v. *Jarrett,* 110 W. Va. 97, 157 S. E. 46. It reiterates a matter made clear in the original *Nuttallburg* decision that distinction must be made between cases where there was no notice, actual, presumptive or constructive, and cases where there was actual notice of the pendency of the action. We said: "In the former instances the return may be impeached; in the latter it may not."

The next case to take note of the pronouncement in the *Nuttallburg* case was *Hatfield* v. *Coal & Coke,* 111 W. Va. 289, 161 S. E. 572, wherein emphasis is laid on the fact that in the first named case the return "was not false in the recital of the fact that it had been served upon the individual named, but was untrue in the assumption that he was then an officer of the corporation." The opinion quotes as follows from *Higham* v. *Iowa Travelers' Assn.,* 183 Fed. 845: "While a sheriff's return of service may be conclusive on the parties so far as it concerns the sheriff's physical acts, and as to his recitals respecting the person on whom the service was made and the date thereof, it is not conclusive as to his conclusion of law that the person on whom service was made represented the defendant in such capacity as to authorize service on him."

These cases are herein reviewed for two reasons: first, to emphasize that in the *Nuttallburg* case the relaxing of the verity rule was founded on narrow and specific basis—incorrect recital in the sheriff's return that Beury was then president of the Nuttallburg Company, and lack of actual notice on the part of its officials; and, second, to impress the fact that in any event the field is very limited in which attack may be made upon officers' returns of service of process. Two ele-

ments must concur: proof of falsity in the return must be strong and conclusive, else the presumption in favor of its truth will prevail; and, it must appear that the defendant had no notice, actual, presumptive or constructive, that a suit was pending against him.

In respect of the alleged falsity at bar, we have already stated that in our opinion the evidence is not such as to establish in convincing manner that the sheriff made a false return. The sum total of the evidence to sustain the attack on the return is the testimony of Mrs. David C. Lanham that the notice was not delivered to her, and the testimony of her daughter-in-law that the sheriff was not seen by her to go to the David C. Lanham home on the day he is supposed to have served the notice. This is a very narrow basis of attack. To permit such testimony to prevail in a matter of this sort would seriously jeopardize the stability of judicial proceedings. The human memory is too fallible to permit the solemn return of a sworn officer to be overthrown as false by the memory-testimony of two witnesses, years after the event, that the sheriff did not do what his sworn duty required him to do and which his solemn return made at the time declares that he did.

We are of opinion that the plaintiff's case fails not only on the score already noted, but for the further reason that before judgment was rendered against him and his co-defendants in the notice of motion proceeding, he had actual notice of its pendency. It appears from the record that either on the return day of the notice, or on the day on which the judgment was entered, two or three days after the return day, and before entry of judgment, the plaintiff had an interview with Forrest B. Poling, counsel for the plaintiff in the law proceeding. Mr. Lanham says that he went to see the attorney because he had just received the information that an effort was to be made to take a judgment against his son, Dellet, who had been seriously hurt the preceding day in an automobile accident. Counsel for Mr. Lanham urges that the evidence tends to show that he had information that there was an action pending against his son, but that the evidence

does not sustain the proposition that he knew that he, himself, was a party defendant to the action. We are unable to accept this view in the light of Mr. Lanham's own admission on cross-examination. It follows: "Q. What did you say Mr. Poling said to you? A. Mr. Poling showed me a note, and I said, 'I never endorsed the note, and it's not my signature, and I never gave anybody else authority to put my name to the note,' and he said he didn't have time to talk to me. Q. You knew then that you were sued on the note? A. I knew then, because the note was before me. Q. Did Mr. Poling tell you you had been sued on the note? A. I don't think he said. Q. But you knew that you had been? A. I knew right then, yes sir."

So, on the question of notice, we must reach the conclusion that the evidence is indisputably against the plaintiff's contention.

In this situation, the fact that David C. Lanham might have been able to make just defense to the proceeding on motion for judgment is not now important. He should have done that at the proper time.

In addition, Mr. Lanham admits that within a few days after the judgment was entered, he saw a statement or notice thereof in a local newspaper, and that he gave the matter no further attention at the time, though it appears from the evidence of the circuit clerk that the pending term of the circuit court did not adjourn for more than two weeks thereafter. Mr. Lanham's explanation: "I supposed there would be plenty of time, before they come on to me, about the pay, or something. I didn't think there was any use to fight fire, before it got out." He misinterpreted the significance of the situation. In an attack such as this case involves, there must have been reasonable diligence on the part of the moving party. He cannot for an indefinite period rest in the knowledge that a judgment has been rendered against him and then come into court to attack it on the ground that he was not served with process. The plaintiff's lack of diligence is manifest.

For the reasons we have above presented, we are of

opinion to reverse the decree of the trial chancellor and to dismiss the plaintiff's bill.

*Reversed; bill dismissed.*